The specified horizontal and vertical foundation reinforcement is also less than that required by the Mesa County Minimum Foundation Standards (sheet 3). The rebar specified and installed would have been more appropriate for a crawl space foundation wall per the Mesa County Minimum Foundation Standards. We have included the IRC design chart and Mesa County Minimum Foundation Standards under Exhibit 5. From a structural analysis standpoint, our calculations indicate that the vertical steel specified and installed is approximately one-fourth smaller than that required to resist the lateral earth pressure recommended by the Lincoln DeVore.

*Recommendation:* On previous repairs designed by our office, epoxy-bolted steel angles have been affixed to the inside surface of the concrete foundation walls to provide additional vertical reinforcement. We are not aware of a reasonable way to add horizontal reinforcement to the foundation walls. Conceptually, we recommend epoxy bolting 3-inch by 3-inch steel angles to the inside surface of the full and partial height foundation walls. The new steel angles should be spaced at 24 inches center to center. We further recommend that to cosmetically repair the visual appearance of the new steel angles new fiberglass blankets should be installed within the basement.

## 26.   Missing basement insulation

The basement has exposed domestic water supply piping and sanitary sewer lines. To prevent freezing of the plumbing lines, heat registers were installed to condition the basement area. However, the perimeter concrete foundation walls were not insulated. We recommend providing fiberglass blankets on the exterior walls to prevent excessive heat loss thought the concrete walls.

*Recommendation:* We recommend the basement foundation walls be insulated with R-19 fiberglass blankets.

## 27.   Misplaced basement floor slab elevation

As discussed under Item 26, the full-height basement walls span vertically between the floor slab and the first floor framing. As shown in the structural foundation plans, the basement floor slab was to be placed on top of the footing to laterally support the bottom edge of the foundation stem wall. As constructed, the top surface of the basement floor slab was placed flush with the top surface of the foundation footing. In the event the basement floor slab heaves 3 inches as described by the Lincoln DeVore report, the basement slab may no longer laterally support the foundation walls. A loss of lateral foundation support would cause structural damage to the home.

Similarly, the vertical heave of the basement floor above the footing will create a noticeable step at the perimeter of basement.  As stated under No. 1 of the 2006 IRC Section R404.1 listed under Item 29 below, the slab should be positioned at the bottom of the wall, not flush with the top surface of the footing.  The structural foundation design shows the placement of the basement slab in relation to the full-height basement walls correctly for construction on expansive soils.

*Recommendation:*  Presently we have insufficient data to recommend the use of a structural floor at the Jensen property; however, additional geotechnical testing may indicate one is required.  Based upon the data available we recommend that the perimeter 12 inches of the basement floor slab be thickened to 12 inches so that vertical heave will not compromise the integrity of the foundation wall.  This work can likely be performed in conjunction with the installation of the perimeter drain recommended under Item 23 and other foundation repair recommendations outlined below.

## 28.  Lateral support not provided at the top edge of the east and west basement walls

As described in Items 26 and 28, the full-height basement walls span vertically between the floor slab and the first floor framing.  As constructed, perpendicular blocking was not installed along the top edge of the east and west foundation walls.  The need for blocking is structurally necessary and was outlined in the building codes predating and postdating the 2000 IRC.  It is unclear why the 2000 IRC does not specifically outline the structural requirements for lateral support of foundation walls.  According to the 2006 IRC, Section R404 Foundation and Retaining Walls:

> "R404.1 Concrete and masonry foundation walls. Concrete and masonry foundation walls shall be selected and constructed in accordance with the provisions of Section R404 or in accordance with ACI 318,ACI 332,NCMATR68–A orACI 530/ASCE 5/TMS 402 or other approved structural standards.  When ACI 318, ACI 332 or ACI 530/ASCE 5/TMS 402 or the provisions of Section R404 are used to design concrete or masonry foundation walls, project drawings, typical details and specifications are not required to bear the seal of the architect or engineer responsible for design, unless otherwise required by the state law of the jurisdiction having authority. Foundation walls that meet all of the following shall be considered laterally supported:

> > "1. Full basement floor shall be 3.5 inches (89 mm) thick concrete slab poured tight against the bottom of the foundation wall.

"2. Floor joists and blocking shall be connected to the sill plate at the top of wall by the prescriptive method called out in Table R404.1(1), or; shall be connected with an approved connector with listed capacity meeting Table R404.1(1).

"3. Bolt spacing for the sill plate shall be no greater than per Table R404.1(2).

"4. Floor shall be blocked perpendicular to the floor joists. Blocking shall be full depth within two joist spaces of the foundation wall, and be flat-blocked with minimum 2-inch by 4-inch (51mmby 102mm)blocking elsewhere.

"5. Where foundation walls support unbalanced load on opposite sides of the building, such as a daylight basement, the building aspect ratio, L/W, shall not exceed the value specified in Table R404.1(3). For such foundation walls, the rim board shall be attached to the sill with a 20 gage metal angle clip at 24 inches (610 mm) on center, with five 8d nails per leg, or an approved connector supplying 230 pounds per linear foot (3.36 kN/m) capacity."

*Recommendation:*  We recommend new full depth blocking be installed along the east and west foundations walls in a minimum of two joist spaces along the foundation wall with flat blocking elsewhere.

## 29.  Concrete and rebar type unknown

According to page 23 of the February 20, 2003 Lincoln DeVore report under the heading Reactive Soils, it states:

"Since groundwater in the Orchard Mesa area typically contains sulfates in quantities detrimental to Type I cement, a Type II or Type I-II or Type II-V cement is recommended for all concrete which is in contact with the subsurface soils and bedrock."

According to the American Council of Engineering Companies (ACEC), A Guideline Addressing Coordination and Completeness of Structural Coordination Documents, jointly published by the Council of American Structural Engineers, structural drawings should indicate concrete strengths, rebar strengths, and type of concrete to be used.  The structural drawings provided to our office include an S-1, S-2, and S-3.  The aforementioned structural drawings do not contain general notes or specifications for the Jensen property concrete.

It is our experience that structural and non-structural concrete type and strength is generally ordered from the structural specifications. Since the structural drawings did not specify that the standard concrete mix, which utilizes Type I concrete, could not be used at the site, it is possible that the footings, foundation walls, basement slab, front porch, garage, and driveway utilize Type I concrete.

*Recommendation:* We recommend the builder provide copies of the concrete batch tickets that reflect what type of concrete was used to construct the Jensen home. Similarly, copies of the invoices that may reflect the rebar strength should be provided. If the documents indicate the strengths and type of materials is acceptable, repair work is not required. If the concrete materials used are deficient, significant repairs will be warranted. A potential recommendation to protect the foundation wall in the event the cement type is improper is to excavate the perimeter of the home and waterproof the walls with a peel-and-stick membrane.

If the builder is unable or unwilling to provide the requested documents, we recommend the concrete be tested to determine its strength and type.

## 30.   Missing plastic vapor retarder below slab

During our site visit we examined the sawcut portions of the basement floor slab and discovered a plastic vapor retarder was not installed beneath the slab. According to the 2000 IRC, Chapter 5 Floors, Section R506 Concrete Floors (on ground):

> "R506.2.3 Vapor retarder. An approved vapor retarder with joints lapped not less than 6 inches (153 mm) shall be placed between the concrete floor slab and the base course or the prepared subgrade where no base course exists.
>
> > "Exception: The vapor retarder may be omitted:
> > 1. From garages, utility buildings and other unheated accessory structures.
> > 2. From driveways, walks, patios and other flatwork not likely to be enclosed and heated at a later date.
> > 3. Where approved by the building official, based on local site conditions."

*Recommendation:* It is our opinion that removal of the entire basement concrete slab is not warranted due to an omitted vapor retarder. Instead, we recommend the basement floor slab be provided with a low-permeance coating/sealant to reduce vapor transmission into the basement.

## 31.   Missing sewer ejector plumbing vent stack

From within the basement we were unable to locate a vent stack for the sewer ejection pit nor were we able to locate a wet vent.  However, we could not access the attic space to determine whether a vent stack was installed.  Per the plumbing code the sewer ejection pit is required to have a plumbing vent.

*Recommendation:*  In the event our future site visit confirms a vent stack was not installed, we recommend a plumbing vent be installed that serves the basement sewer ejection pit.

## 32.   Structurally inadequate isolated pads in basement

Sheet S1 of the structural foundation plans for the Jensen residence specify that 2-foot by 2-foot by 10-inch thick reinforced concrete pads were to be constructed to support the isolated interior pad footings.  During our site visit we observed that the basement floor slab had been sawcut at each of the basement columns to create a 1-foot, 6-inch by 1-foot, 6-inch by 4-inch thick foundation pad that was structurally isolated from the basement concrete slab on grade.  As constructed/sawcut, the pad footings are more than 40 percent smaller than that specified by the structural drawings.

The sawcut pads are structurally inadequate for several reasons which include the following:

- The structural footings are smaller than that specified by the foundation drawings.

- Our calculations indicate the load on the soil beneath the sawcut footing is approximately 2,700 psf, which is higher than that prescribed by Lincoln DeVore or the geologist who recommended 2,000 psf be used at the home.  A supplemental letter is necessary from the geotechnical engineer to warrant such a high bearing pressure.  As originally designed, the 2-foot by 2-foot pads have a bearing pressure less than 2,000 psf.

- We were unable to locate any reinforcement in the sawcut.  The building code requires that the isolated pad footings be reinforced with rebar.

- ACI 318-05 Section 15.7, Minimum Footing Depth, specifies that footings shall not have less than 6 inches of concrete above the rebar. Section 7.7.1, Concrete protection for reinforcement requires no less than 3 inches of concrete be placed below the rebar. Accounting for the thickness of the rebar, footings are required to be a minimum thickness of 9-1/2 inches.   The slab is also thinner than the Mesa County Minimum Foundation Standards, which requires a minimum 10-inch thick concrete pad.

As constructed, the isolated pads are too thin, do not comply with the building code, and are not structurally adequate.

*Recommendation:*  We recommend new foundation elements be constructed to support the isolated interior columns.


## 33.   Structurally inadequate north foundation wall

The Mesa County Building Department specifies a minimum frost depth of 12 inches.  The Lincoln DeVore geotechnical report recommended a frost depth of 18 inches (page 19).  Nearby jurisdictions, such as Garfield, Gunnison, Montrose, and Pitkin Counties prescribe a frost depth of 26 to 48 inches from finished grade to the bottom of the footing.   The structural foundation plans show the foundation wall supporting the north exterior wall of the home was to have 24 inches of frost depth.

During our site visit we hand excavated two shallow pits to reveal the foundation supporting the north exterior wall of the home extended only 8 inches below grade and was only 8 inches thick.  As constructed, the footing does not meet the minimum frost depth requirement for residential structures.

As previously mentioned, ACI 318-05 Section 15.7, Minimum Footing Depth, specifies that footings shall not have less than 6 inches of concrete above the rebar.  Section 7.7.1, Concrete Protection for Reinforcement requires no less than 3 inches of concrete be placed below the rebar.  Accounting for the thickness of the rebar, footings are required to be a minimum thickness of 9-1/2 inches, which is thicker than the 8-inch footing installed.

As constructed the wood-framed exterior wall bears on the top surface of the footing, which is even with the adjacent grade.  According to the 2000 IRC, Section R323, Protection Against Decay:

> "R323.1.1 Ground Contact.  All wood in contact with the ground and that supports permanent structures intended for human occupancy shall be approved pressure preservatively treated wood suitable for ground contact use, except untreated wood may be used where entirely below groundwater level or continuously submerged in fresh water."

According to the 2000 IRC, Section R404, Foundation Walls:

> "R404.1.6 Height above finished grade.  Concrete and masonry foundation walls shall extend above the finished grade adjacent to the foundation at all points a minimum of 4 inches (102 mm) where masonry veneer is used and a minimum of 6 inches elsewhere."

According to the building code, the north exterior wall framing should have been elevated a minimum of 8 inches above grade; however, due to the expansive soils, a better design would have been to elevate the framing 8 inches plus the predicted amount of soil heave.  At a minimum the footing should have been 9-1/2 inches thick and extended below frost depth.  To comply with the minimum building code requirements, the north foundation wall should have been an absolute minimum of 20 inches tall (12 inches plus 8 inches); however, justification for a taller wall exists.

Similarly, it is standard practice to reinforce perimeter foundation walls so they can clear span 8 to 10 feet over soil anomalies or soft areas.  As constructed, the north exterior wall footing cannot structurally clear span 8 to 10 feet.

*Recommendation:*  We recommend new foundation elements be constructed to support the north exterior wall of the home.  The new foundation system should comply with the minimum prescribed frost depth of 12 inches; however, a deeper foundation is preferred.

## 34.  Incompatible garage foundation

Different foundation types should not be mixed on a single structure to avoid incompatible foundation responses.  The Jensen home was constructed with a continuous spread footing foundation for the habitable portion of the home and a thickened edge slab at the garage.  Shallow thickened edge slabs are intended to be used for detached garages only and where expansive soils are not present.  Since the thickened edge garage slab is structurally connected to the spread footing foundation and supports the pre-engineered wooden trusses over the habitable portion of the home, the differential movement between the two building elements will cause distress to the structure.

Under Exhibit 2 we have included the Mesa County building design guide for detached garages.  The design guide shows the thickened edge slab is for detached garages, but adds a note that states "Check with local building department for swelling soils.  Caissons may be required."  As previously discussed, the soils beneath the Jensen property have a swell potential.  Under Exhibit 5 we have included the Mesa County Minimum Foundation Standards which state thickened-edge slabs are permitted only where the soils are non-expansive.

Foundation Detail A included with the Mesa County building design guide for detached garages specifies that if a thickened edge slab is used, it should extend a minimum of 16 inches below grade.  The foundation plans for the Jensen property garage, which show a 16-inch thick slab, allow for only 8 inches below grade if the wood framing is held 8 inches above grade as required by the building code.

During our site visit we hand excavated a shallow pit along the thickened-edge garage footing, which revealed that the foundation supporting the east exterior wall of the extended only 8 inches below grade.  As constructed, the foundation at the perimeter of the garage does not meet the minimum frost depth for residential structures prescribed by the building department or the Lincoln DeVore soils report.

The thickened-edge garage concrete slab ties the non-structural slab, which cannot meet the minimum prescribed foundation dead load, to the perimeter foundation wall.  As constructed, the thickened-edge foundation slab is highly susceptible to vertical movement from the underlying expansive soils.

*Recommendation:* We recommend the existing roof trusses and exterior wall be temporarily shored and the existing garage foundation removed.  Once the existing thickened-edge foundation slab is removed, it should be replaced with a new engineered foundation that is complaint with the building code.  This work should be coordinated with the garage slab replacement described under Item 15.

## 35.   Improperly installed foundation anchor bolts.

It is our understanding the builder forgot to install foundation anchor bolts along the north foundation wall.  Once the anchor bolt deficiency was discovered, the basement wall plastic vapor barrier was pulled back and new expansion bolts were installed.  As shown in Photograph 46 included under Exhibit 9, the newer anchor bolts were installed with 1/2 inch or less of edge distance, and the plastic vapor barrier was not reinstalled.  The edge distance on the bolts is less than that required by the building code; and therefore, the installed bolts may not be reliable in anchoring the home to the foundation.  Although 2 inches of edge distance is preferred, the minimum edge distance for a 1/2-inch diameter anchor bolt is 3/4 inch.

*Recommendation:* We recommend new anchor bolts be installed where the edge distance is less than 3/4 inch, and that the plastic vapor barrier be reinstalled.

## 36.   Inappropriate foundation type.

The Lincoln DeVore report provides recommendations for three types of foundations including a continuous strip footing, an interrupted pad, and a drilled pier.  Review of the structural foundation plans and our observation of the home revealed that continuous spread footings were used.  According to page 15 of the February 20, 2003 Lincoln DeVore report under the heading Shallow Foundations, it states:

> "Recommendations pertaining to balancing, reinforcing, drainage, and inspection are considered extremely important and must be followed. Contact stresses beneath all continuous walls should be balanced to within + or − 150 psf at all points.  Isolated interior column footings should be designed for contact stresses of about 200 psf more than the average used to balance the continuous walls."

If engineered and compacted structural fill was used beneath the home, Lincoln DeVore states the balancing variation may be increased to plus or minus 200 psf at all points and isolated interior column footings should be designed for contact stresses of 150 psf more than the average used to balance the continuous walls.

As part of our investigation we calculated the dead load on the foundation walls supporting the home.  The results are as follows:

- South basement foundation dead load: 908 psf

- East and West basement foundation dead load: 671 psf

- North basement foundation dead load: 323 psf

- Isolated interior pad footings dead load: 670 psf

- North exterior foundation wall of garage dead load: 313 psf

As determined by our calculations, the foundation dead loads are not balanced within 150 or 200 psf of each other, and the isolated interior pad footing bearing is not 150 or 200 psf more than the average used to balance the continuous walls.  We are also unaware of any open pit examination or soil inspections that were conducted as required and identified as extremely important by Lincoln DeVore.  Ms. Jensen's statement that doors were racked in the frames and the presence of 1/8-inch wide cracks that were reportedly patched by the builder suggest that the foundation system as constructed is incompatible with the geotechnical conditions at the site.

*Recommendation:* We recommend the existing foundation elements and the foundation element recommended to be replaced be underpinned with steel helical piers.  We further recommend:

A. Demolish the existing exterior footing at discrete locations and install new 1-1/2-inch solid square double lead helical piers at approximately 8 feet center to center at the existing foundation walls.  Earth Contact Products (ECP) part No. TAF-150-60 or Chance SS5 anchors may be used.  The new helical piers should be supported at the foundation walls using an ECP Model 150 or Chance Model C150-0121 standard helical bracket.  The new helical piers should have a minimum installed length of 25 feet, a working load rating of 16 kips, an installation torque of 5,000 foot-pounds, and an ultimate load of 40 kips.  The four isolated concrete foundation pads that support the interior monoposts may be supported by an approved beam-to-pier bracket.  The pier installation contractor should be pre-qualified by the structural and geotechnical engineers prior to construction.  We recommend further geotechnical investigation be conducted to verify the existing soils conditions and that our foundation repairs are adequate for the soils below the structure.

B. We recommend that all foundation walls be voided and not bear on the expansive soils.  To accomplish this we recommend establishing an 8-inch deep by 20-inch wide minimum void space beneath all existing footings using polyethylene wrapped cardboard void form.  Install 6-inch by 8-inch void form above the exterior footing projection.  Install HDPE SureVoid SureRetainer at the perimeter of the home at all areas where backfill is to be installed to prevent the backfill material from displacing the void form.

## 37.   Foundation not designed by a Colorado licensed structural engineer

Ms. Jensen stated she believed the structural components of her home were designed by a structural engineer licensed in the state of Colorado since the foundation plans were stamped.  Sheets S1 and S2 of the structural drawings, which are for the foundation construction at the Jensen Property, are stamped by Mr. Joseph P. Foster with a U.S. Navy Engineering Corp stamp No. USN-PE948.  Our research revealed Mr. Foster does not hold an EIT or PE engineering license in the state of Colorado.

As part of our investigation we contacted Ms. Angela St. Louis with the Colorado State Board of Licensure for Architects, Professional Engineers, and Land Surveyors.  Ms. St. Louis stated a US Navy engineering license was only permitted to stamp engineering work for projects in the state of Colorado where the federal government was the owner and the building authority, such as a large dam.  She stated that a Colorado Professional Engineer license is required to stamp all other engineering work for public and private design and/or construction.

Ms. St. Louis referred us to the Colorado Revised Statutes, Title 12 for further clarification on this subject.  According to the Colorado Revised Statutes, Title 12, Professions and Occupations, Article 25, Engineers and Surveyors, Part 1, Engineers, 12-25-105. Unlawful practice - penalties – enforcement:

> "(1) It is unlawful for any individual to hold himself or herself out to the public as a professional engineer unless such individual has complied with the provisions contained in this part 1.

> "(2) It is unlawful for any individual, partnership, professional association, joint stock company, limited liability company, or corporation to practice, or offer to practice, engineering in this state unless the individual in responsible charge has complied with the provisions of this part 1.

"(3) Unless licensed or exempted pursuant to this part 1, it is unlawful for any individual, partnership, professional association, joint stock company, limited liability company, or corporation to use any of the following titles: Civil engineer, structural engineer, chemical engineer, petroleum engineer, mining engineer, mechanical engineer, or electrical engineer. In addition, unless licensed pursuant to this part 1, it is unlawful for any individual, partnership, professional association, joint stock company, limited liability company, or corporation to use the words "engineer", "engineered", or "engineering" in any offer to the public to perform the services set forth in section 12-25-102 (10). Nothing in this subsection (3) shall prohibit the general use of the words "engineer", "engineered", and "engineering" so long as such words are not being used in an offer to the public to perform the services set forth in section 12-25-102 (10)."

Since Mr. Foster is not licensed in the state of Colorado pursuant to Part 1 of the Colorado Revised Statutes, Title 12, it is our opinion that the home was not designed under the responsible charge of an engineer licensed in the state of Colorado. As previously stated, the soil inspection for the Jensen property was performed and signed off by Mr. Jason D. Collard and Mr. Jim Huddleston. Our research revealed that neither Mr. Jason D. Collard nor Mr. Jim Huddleston hold an EIT or PE license in the state of Colorado.

*Recommendation:* We recommend the original design of the home be analyzed for vertical and lateral load path to determine if any additional structural deficiencies exist. It was beyond our scope of work to perform a complete structural analysis of the home; however, Higgins & Associates can perform that service. As previously discussed we recommend additional testing of soils underlying the home and slab to provide the additional geotechnical information necessary to finalize our repair recommendations.

Summary and Conclusion

It is our opinion, based upon a reasonable degree of engineering probability, there are several defects in the design and/or construction of the Jensen property. Some of the defects have resulted in distress to the interior and exterior of the home. Several repairs are required to address the distress and deficiencies observed. It is our opinion the constructed home is below the standard of care for builders in Colorado.

Based upon the significant deviation from the geotechnical recommendations, lack of reinforcement, lack of frost depth, mixed foundation types, incorrect footing thicknesses, questionable cement type, misplaced floor slab elevation, and the expansive soils present beneath the home it is our opinion that significant repairs are warranted.  It is typically our opinion to attempt to repair a home; however, the numerous deficiencies may make complete foundation replacement a viable option.  We recommend a professional cost estimator compare the costs associated with each type of repair.

The scope of this limited visual inspection was confined to areas easily accessed or exposed during limited destructive testing.  Our investigation was completed to document the observed construction defects at the home and provide general repair recommendations for those defects and is limited only to that subject matter.  We anticipate supplementing this report once the requested information is provided and we are provided access to other areas of the home.  This report cannot and does not serve as an expressed or implied guarantee or warranty for the home nor is it an exhaustive evaluation of the structure.

We trust this report is self-explanatory; however, should you have any questions, please feel free to contact our office.

Sincerely,

Reviewed By,

Peter Marxhausen, M.S., P.E.
Structural Issues

Michael C. Higgins, P.E., President
Geotechnical Issues